# UNITED STATES BANKRUPTCY COURT
## NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 7 |
| | ) | |
| Erin V. McDougal, | ) | Bankr. No. 16 B 08776 |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| Tim Grover and Katherine Grover, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | Adversary No. 16 A 00356 |
| | ) | |
| Erin V. McDougal, | ) | |
| | ) | |
| Defendant. | ) | Judge Jacqueline P. Cox |

**Memorandum Opinion On Motion For Directed Finding
That A Debt Is Dischargeable**

## I. Jurisdiction

Bankruptcy courts have authority to hear and determine all cases under title 11, the Bankruptcy Code, and all core proceedings arising under title 11, or arising in a case under title 11, referred under 11 U.S.C. § 157(a) and may enter appropriate orders and judgments, subject to review in the federal district courts under 28 U.S.C. § 158. 28 U.S.C. § 157(b).

The federal district courts have original and exclusive jurisdiction of all cases under the Bankruptcy Code. 28 U.S.C. § 1334(a). Federal district courts have original but not exclusive jurisdiction of all civil proceedings arising under title 11, or arising in or related to cases under title 11. 28 U.S.C. § 1334(b).

The federal district courts may refer any or all cases under title 11, and any or all proceedings arising under title 11 or arising in or related to a case under title 11, to the bankruptcy judges for the district. 28 U.S.C. § 157(a). The District Court for the Northern District of Illinois refers its bankruptcy cases to the Bankruptcy Court for the Northern District of Illinois. Northern District of Illinois Internal Operating Procedure 15(a).

During bankruptcy proceedings the debtor's assets are applied to the payment of his or her debts and, even though the assets will usually be insufficient to pay those debts in full, the debtor will emerge from bankruptcy with the unpaid balance discharged. Some debts, however, are not dischargeable; among them are obligations for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud. *McClellan v. Cantrell*, 217 F.3d 890, 892 (7th Cir. 2000). Creditors Tim Grover and Katherine Grover (the "Grovers") contend that Debtor Erin V. McDougal's ("McDougal") debt owed them should be excepted from discharge due to her fraudulent behavior.

This matter is a core proceeding regarding which this court has authority to enter a final judgment. 28 U.S.C. § 157(b)(2)(I) - a determination as to the dischargeability of a particular debt.

## II. Background

The court heard the trial of this adversary proceeding on July 12 and 26, 2017. The Plaintiffs rested their case in chief on July 26, 2017 after presenting the testimony of Tim Grover, Katherine Grover and the Defendant Erin V. McDougal. At the close of the Plaintiffs' case the Defendant made an oral motion for directed judgment asking the court to find that the debt was dischargeable. The court will grant that motion; the debt owed the Grovers will be discharged.

The court has evaluated this motion under Federal Rule of Bankruptcy Procedure 7052(c) which provides that:

> If a party has been fully heard on an issue during a nonjury trial and the court finds against the party on that issue, the court may enter judgment against the party on a claim or defense that, under the controlling law, can be maintained or defeated only with a favorable finding on that issue. The court may, however, decline to render any judgment until the close of the evidence. A judgment on partial findings must be supported by findings of fact and conclusions of law as required by Rule 52(a).

Federal Rule of Bankruptcy Procedure 7052(c).

This Rule allows the court to enter judgment at any time that it can appropriately make a dispositive finding of fact on the evidence.

Now that the Plaintiffs have been fully heard, the court will enter its judgment that the debt in issue is dischargeable.

### III. Facts

McDougal entered into a written lease with the Grovers in 2011 to rent their apartment, unit 3303, at 2 East Erie Street, Chicago, Illinois, from October 2011 to October 2013. She agreed to rent the unit for $3400 a month.

McDougal entered into a second lease in 2013 with the Grovers, continuing her possession of unit 3303. The second lease required her to pay the Grovers $3600 a month rent. She also agreed to rent the Grovers' parking space for $300 a month, making her obligated to pay them $3900 a month for two years.

The Grovers allege that McDougal engaged in fraud beginning in March 2015 when she began to pay rent late and make partial payments in some months. She paid the Grovers only $3400 that month. When asked when the $500 balance would be paid McDougal said that she would deposit funds into their account. This was not done. The Grovers allege that McDougal knew that her statement was false and that she did not intend to make any payments. Amended Complaint ("Amended Complaint"), Adversary Proceeding 16-00356, Docket Number 19, ¶15.

In a March 2, 2015 text message to Tim Grover McDougal said "Fyi, Your bank would not cash or deposit $500 worth of my gig checks so I will return to pay rest of rent tomorrow. Deposited $3600." Plaintiffs' Exhibit 4.

In a March 27, 2015 text message to Tim Grover McDougal said : "In California. Is it $300? I thought I deposited that. I will ask someone to deposit it. Sorry. Home on the 1st." Plaintiffs' Exhibit 5.

In April 2015 McDougal paid the Grovers only $3600. When asked about the $800 balance due from March and April, McDougal said that she would deposit the funds in the Grovers' account the next day. This was not done. The Grovers allege that McDougal knew that these statements were false and that she did not intend to pay the amounts due by depositing funds in the Grovers' account. Amended Complaint, ¶ 20.

When reminded that the March and April rent payments were short McDougal said in an April 9, 2015 text message to Tim Grover that she thought that he had told her she owed him $300 when she was out of town and that she would look it up and put more cash into their account. Plaintiffs' Exhibit 7.

On July 11, 2015 McDougal made statements that she would make payments in the

future. Amended Complaint, ¶ 26. McDougal is alleged to have made similar statements on other occasions. Amended Complaint, ¶¶ 30, 33, 35, 36. The Grovers also allege that McDougal intended to defraud them when they entered into the second lease with her. Amended Complaint, ¶ 41.

Were those statements fraudulent or were they promises to do something in the future, making McDougal's failure to perform contract breaches, not fraud?

In a June 3, 2015 text message to Tim Grover about back rent McDougal said "Yes. $2500 tmrw. $2500 next week. Back rent third week. Thx." In a second June 3, 2015 text message McDougal said "Sorry. $2500 tmrw $1400 next week $800 following week. I'm working in California then nyc then getting a lumpectomy. I always said I wished I was flat chested . . . Guess u should be careful what you wish for!!!! forgot it?" Plaintiffs' Exhibit 9.

After being reminded about how much she owed the Grovers and that eviction was being pursued McDougal said in an August 18, 2015 text message:

I have been looking for someone to take over the lease. I will speak to you tomorrow. Ever since last year when I was no longer allowed to do events via airbnb I have struggled to pay the rent here and my medical bills are outrageous. I understand your position! I don't know if I can talk to you in person but I'm sure there is a way to avoid eviction process as it would only take longer than my actual lease has left. I was hoping to stay just get a couple to put the lease in their name from here on, which I think I found, ironically. And I spoke to a friend who offered to be a co signer (who owns Bijans in the building and numerous other units in the bldg). So, while it seems like I'm ignoring you, I've actually been

> trying to resolve the issue mightily. I answered you a few weeks ago and never heard back. Also, FYI: I filed for a grant from the musicians union to help pay the late rent two months ago. I'm waiting for it. This is my home I prefer not to leave but I need a roommate to pay half. $2K is really all I can do alone. Again, if you want not to go thru the process, I can get a new signer.

Plaintiffs' Exhibit 14, pp. 4-8.

In a text message later that day McDougal discussed having others take over the lease. Plaintiffs' Exhibit 14, p. 8.

The Grovers would not agree to those proposals.

The Grovers allege that McDougal paid only $2000 in July 2015. When asked about the past due amount she said that she thought that she had paid those amounts. When told that she was mistaken she said that she was going to deposit the past due funds in the Grovers' account at South Central Bank that day. They allege that she knew at the time she made these statements they were false and that she did not intend to deposit monies in the their account that day or in the ensuing days. Amended Complaint, ¶¶ 22-27.

In a September 2, 2015 text message in response to Tim Grover's request for an update McDougal said:

> On lease? You got rent yesterday, right? I was crazy busy with the Chicago tribune, but ralf said he dropped it off for me. Lmk if he didn't! I gave him cash and I'm not in chi today. I'm aggravated with Vaughn who decided not to even tell me he had an opportunity in Miami but told you before me. A lot of wasted time on my end. I'm talking to my gf, a realtor with @properties who has a friend

who is interested in taking on the lease . . .

Plaintiffs' Exhibit 18, pp. 2-3.

When told that $3000 had been deposited McDougal responded in a text message: "Hmmm . . . Ok I will call him. I gave him $3K cash in an envelope and $900 in a check. We will get you the rest today." Plaintiffs' Exhibit 18, p. 3.

## IV. Discussion

Section 523(a)(2)(A) of the Bankruptcy Code excepts from discharge any debt "for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition." 11 U.S.C. § 523(a)(2)(A). Because bankruptcy relief is designed to give debtors a fresh start, debts are presumed to be dischargeable unless proved non-dischargeable. The burden of proving an exception to discharge rests with the objecting creditor who must establish non-dischargeability by a preponderance of the evidence. *Grogan v. Garner*, 498 U.S. 279, 286-87 (1991). In addition, exceptions to discharge are to be construed strictly against a creditor and liberally in favor of debtors. *In re Zarzynski*, 771 F.2d 304, 306 (7th Cir. 1985).

Section 523(a)(2)(A) provides three grounds for holding a debt to be non-dischargeable: false pretenses, false representations and actual fraud. *Bank of Commerce & Trust Co. v. Strauss (In re Strauss)*, 523 B.R. 614, 625 (Bankr. N.D. Ill. 2014). The Grovers allege that McDougal has made false representations.

However, the statements were not made when the debt for the lease was obtained. The Grovers, contend, however, that false statements were made after the relationship began with the

intent to get them to forbear from suing for eviction. Reviewing the evidence in its entirety, however, the court finds that McDougal did not make false statements to get the Grovers to forbear. The court has evaluated McDougal's conduct, statements and payment history. Based on the substantial payments of $3000 made to the Grovers on September 2, 2015 and $3900 on October 2, 2015, the court is convinced that McDougal did not make false statements to the Grovers with an intent to deceive them. *See* Debtor's Exhibit 1 - Adversary Plaintiffs' Answers to Adversary Defendant's First Set of Interrogatories, pp. 2-3. That chart of payments shows that she made payments of $35,000.00 starting in March 2015 after she was alleged to be making false representations with intent to deceive. Her conduct says otherwise. She was struggling to meet her obligations.

She made promises to pay that she could not always keep.[1]

To prevail the Grovers have to prove as to each allegedly false representation that (1) the debtor made a false representation she either knew was false or made with reckless disregard for the truth; (2) the debtor made the false representation with an intent to deceive or defraud; and (3) they justifiably relied on the false representation. *Id.*

### A. False Representations

The Grovers have not shown that false statements were made to obtain property. They can not show that she entered into either agreement with no intention of performing it. *Rezin v. Barr*, 194 B.R. 1009, 1017-18 (Bankr. N.D. Ill. 1996) where the court noted that failure to fulfill a contractual obligation alone does not establish a misrepresentation. McDougal made several

---

[1] According to statements made by the attorneys in argument, she may have paid the Grovers $170,000 over the course of the tenancies.

promises to catch up regarding her past due rent obligations. Each statement was a promise to pay in the future. Her failures to satisfy her obligations were contract breaches, not fraud. The Seventh Circuit has noted that "failure to honor one's promise is (just) breach of contract, but making a promise that one *intends* not to keep is fraud." *United States ex rel. Main v. Oakland City University*, 426 F.3d 914, 917 (7th Cir. 2005).

The Grovers have not shown that the promises McDougal made were intentionally false or so patently reckless and ungrounded that they amounted to fraud or that she never intended to make the promised payments. The evidence shows that McDougal made many payments, although she was late doing so on some occasions.

### B. False Representations Made with Intent to Deceive

McDougal satisfied her obligations under the first lease entered into in 2011. She used Airbnb to secure others to use the premises to make money. The building management found out and the Grovers were fined as the Airbnb business was considered to be subletting which both the building management and McDougal's lease prohibited. McDougal struggled after losing this income stream. She worked as a jazz singer but did not make enough from that to afford the apartment.

The court finds from the evidence heard at trial that McDougal made several promises, not false representations of fact with intent to deceive.

### C. Justifiable Reliance

To get a non-dischargeability judgment creditors have to show that they relied on false statements. Reliance had to have been actual and justifiable. Actual reliance means that the misrepresentation was the cause-in-fact of the debt. *Strauss*, 523 B.R. at 629. To show

justifiable reliance a creditor can not "blindly rely upon a misrepresentation the falsity of which would be patent to him if he had utilized his opportunity to make a cursory examination or investigation." *Ojeda v. Goldberg*, 599 F.3d 712, 717 (7th Cir. 2010).

Reliance on a false representation is not relevant herein, however. The Grovers did not rely on false representations. They relied on promises from a tenant who performed so well under the first lease that they gave her a second lease. The court notes McDougal's testimony that she was not asked by the Grovers to submit information about how or when she earned income to support herself when she signed the leases.

## V. Conclusion

The Grovers have failed to prove that the debt owed them is not dischargeable. Judgment will be entered against Plaintiffs Tim Grover and Katherine Grover. Judgment will be entered in favor of Erin V. McDougal. The $33,680.48 debt alleged to be owed by Erin V. McDougal to Tim Grover and Katherine Grover will be discharged.

**Date: August 2, 2017**                    **ENTERED:**

_____
Jacqueline P. Cox
**United States Bankruptcy Judge**